· No. 884

First Circuit

SHINGLEUR v. BATON ROUGE ELEC· TRIC CO.

(December 8, 1931. Opinion and Decree.)

G. Caldwell Herget, of Baton Rouge, attorney for plaintiff, appellant.

Taylor, Porter & Brooks, of Baton Rouge, attorneys for defendant, appellee.

MOUTON, J. In September, 1929, plaintiff, a lineman for defendant company, fell from a telephone pole from which he suffered injuries to his hand and head. At his solicitation and against the advice of the company, he obtained a lump sum settlement from defendant for the loss of the use of his hand. 'He had been discharged as being entirely cured from the hospital at Baton Rouge when he made this settlement, was not then suffering from injury to his head, and, if any existed, the company was equally unaware of that fact.

The settlement was fair and just, and is not attacked by plaintiff. The injury to his hand has therefore passed out of the case.

Plaintiff claims that since the settlement he has been suffering with dizziness and headaches. He alleges that a blood clot or piece of bone has been deposited on his brain where the fracture to his skull occurred, and that there "is a grave possibility he may be subjected to epileptic fits or insanity."

This dizziness and headaches, also the grave possibility of the development of epilepsy and insanity, he avers, are the direct result of his head injury. Averring that he is disabled and physically incapable of doing work of any reasonable character, he is demanding compensation from defendant company for four hundred weeks, aggregating the sum of $8,448, subject to a credit of $1,731.84, amount received when the settlement, above referred to, was effected.

Judgment was rendered below rejecting plaintiff's demand, from which he prosecutes this appeal.

It was clearly shown at the trial where plaintiff appeared as a witness that he was absolutely mentally normal, and had never suffered since the accident, from epilepsy, fits, or insanity. The very allegation in his petition "that there is a grave possibility that he may be subjected to epileptic fits or insanity" shows that he grounded himself on the future possible development of those afflictions. He formulated his averments of the possibility of these future troubles, also in reference to his dizziness and headaches, on the advice he received from Dr. W. H. Cooke, of Baton Rouge, with whom he had a consultation about the injury to his skull.

In testifying on the subject of the injury to his head, Dr. Cooke said that there was a possibility, but "not a grave possibility as far as insanity is concerned." He said he believed such an injury "leaves character changes which are on the border line of insanity." Dr. Cooke said thereafter that he had not observed anything in the personality of plaintiff showing that he had undergone any change in character. This testimony from Dr. Cooke, from whom plaintiff took advice, fails altogether to support his allegation that there "is a grave possibility that he may be subjected to epileptic fits or insanity."

Dr. Bird of Baton Rouge examined plaintiff's head injury three times. He says, that there is a foreign body imbedded in his brain or pressing against it. His opinion is that there is great possibility of the ultimate result of epilepsy or insanity.

When plaintiff was injured, he was brought to the hospital in Baton Rouge, where he was placed on a table and was examined by Dr. McHugh.

Dr. McHugh introduced his finger in the wound which could be palpated and found a small button of bone depressed. He says that there were no symptoms of the compression of the brain, and that at the time he testified he did not think there was any pressure there.

Not long after treatment at the hospital, plaintiff was discharged as cured.

Dr. McHugh said practically there was no chance for epilepsy and a very vague possibility of insanity, resulting from the fracture in plaintiff's skull.

Drs. Weis and Riche were also of the opinion that any danger of plaintiff suffering from epilepsy or insanity as a result of that wound must be reckoned as a remote possibility.

The preponderance of the expert testimony shows, as we read the record, that there exists only a vague or remote possibility that plaintiff may at some future time suffer from epilepsy or insanity as the result of his head wound. There is not even a probability that he will have such an unfortunate experience. He was perfectly rational at the trial, and we have no reason whatsoever to believe from the evidence that there will be any character change in his personality upon which we could grant relief to him on his claim for compensation on that score.

We now pass to the alleged dizziness and headaches which plaintiff ascribes to his head injury, and which he says disabled him from doing work of any reasonable character.

In testifying about headaches, Dr. Cooke, expert witness for plaintiff, says there are

one hundred and fifty causes for headaches, and for some of them medical science is unable to account.

Dr. Weis testifies that numberless thousands suffer from headaches and dizziness who never had a skull injury. It seems that these troubles are rather common, and can arise from many causes, some of which, so far, are unknown to physicians.

It is impossible for us from that character of evidence to say that the dizziness and headaches of which plaintiff complains were the direct result of the wound to his head, as it is by him alleged. It would indeed be impossible to say that this dizziness or headaches had any connection whatsoever with that injury, directly or indirectly. The cause that brought on that trouble may always remain shrouded in mystery.

It may be that the disability alleged by plaintiff is the result of his dizziness or headaches, but there is no proof, as before stated, to show that it is the result, directly or indirectly, of the head wound received by plaintiff while engaged in the service of defendant company. That proof was essential to his recovery. It may also be stated in connection with the foregoing that it is extremely doubtful, from the expert testimony taken in the case, as a whole, to say, that plaintiff is incapacitated from doing work of any reasonable character on account of the troubles of which he complains. There are several occupations he could follow, the record shows, but, even if not so, plaintiff has failed to establish his demand with legal certainty which justified the rejection of his suit by the trial judge.